JUDGE HARDIN
delivered the following dissenting opinion:
Unable to concur in the conclusion of the majority of the court in this case, I propose briefly to indicate the reasons which have induced my dissent.
*420 Like the majority of the court, I admit that for certain fiseal purposes the justices of the peace, together with the judge, constitutionally and legally constitute- the county court; and my objection to the appropriation made by the Fayette County Court does not rest on the solution of any question as to the authority of the justices to act as a part of the court, but alone on my construction of the law conferring the jurisdiction of the county courts.
"Whether the court had power to make the appropriation of one thousand five hundred dollars, and provide for its payment out of the county levy, in aid of the noble charity so justly and appropriately lauded in the opinion of the court, is the only question which I will consider.
As I conceive, the whole general power of county courts to provide for the poor is comprehended by a single clause of the third subdivision of section 1 of article 19 of chapter 27 of the Revised Statutes: “to make provision for the maintenance of the poor;” and I agree with the court that the correlative provisions of chapter 75, Revised Statutes, concerning the “poor and poor-houses,” only regulate the exercise of the general power in certain respects, and do not constructively abolish the power to provide for the poor in other modes.
Therefore the elaborate argument in favor of a discrimination by the county courts, between certain classes which should be the inmates of poor-houses and orphans requiring the nurturing care of the court in some more suitable mode, which certainly accords with a sound and enlightened philanthropy, is wholly irrelevant to the question, on which I have felt constrained respectfully to dissent from the decision of the court.
To correctly determine the question under consideration, the precise scope of the power of the county court “to make provision for the maintenance of the poor” *421 should not only be rightly understood, but also the extent of the power which the Fayette County Court assumed to exercise in making said appropriation. As I construe the statute, the provision it authorizes the court to make is limited by the fair and reasonable import of the word maintenance, which has been defined to mean “ sustenance,” or “ support by means of supplies of food, clothing, and other conveniences.” Under this authority the court undertook to give to the appellant, a charitable corporation, one thousand five hundred dollars, payable out of the county levy, to aid in the enlargement and furnishing of its building at Lexington, used for the support, care, and education of poor orphan children of the city of Lexington and County of Fayette; but under its own exclusive control, and independent of the Fayette County Court.
However meritorious and praiseworthy may have been the benevolent object the gift was intended to foster, and although the county court in making this liberal donation may reasonably have expected that it would at least indirectly inure to the relief of those who might have become a burden to the county, I am constrained, by my construction of the statute referred to, to concur in the conclusion of the circuit court that the county court in making the appropriation transcended its authority.
This donation, although designed ultimately to benefit poor orphans, did not directly and certainly secure maintenance to any particular individual, nor did it acquire for the county court any share in the control of the asylum, or any compensatory interest in it. Conceding the power of the court to contract with the corporation for the care and nurture of helpless children, was it authorized to give the money of the county to the institution in the mere expectation that its future acts of benevolence would compensate the county ? If so, where is the limit to the power *422 of the county courts to make appropriations which may in some form alleviate the condition of unfortunate individuals who may become paupers ? May they not for the same charitable object deplete their county treasuries in aiding any of the many philanthropic societies whose object and aim is the relief of the poor?
But the benevolent objects of the Orphan Society of Lexington do not stop at the mere maintenance of its beneficiaries nor their moral training, but they comprehend comforts and educational advantages which hundreds of tithable tax-payers are unable to provide for their own children.
Could it have been contemplated by the authority to provide for “the maintenance of the poor” that, notwithstanding the benevolent provisions of our common-school system, the county courts should have power to tax every tithable, rich or poor, to pay donations to private institutions of learning?
Reference has been made to the restrictions of the law on the levying power of the county courts, to show that the people can not be greatly oppressed by appropriations of the courts. But while protection is thus measurably secured, a legislative intent is thereby manifested to limit appropriations to objects certainly provided for by law.
"Whether an institution so commendable in its objects and aims as the Orphan Society of Lexington ought not to have the aid of enforced contributions from the community most benefited by it is a question for the consideration of the legislative, not the judicial, branch of the government. Failing, as I have, to be able to reconcile the action of the county court with the law defining its '.urisdiction, and therefore impelled by a sense of duty to dissent from the opinion of the majority of the court, *423 I have felt required by the importance of the principal question decided, to express the reasons of my non-concurrence in said opinion.